**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **COMPUTER TRACKING SYSTEMS LLC,** | |
| **Plaintiff,** | **CIVIL ACTION NO. 2:16-cv-00762** |
| **v.** | **PATENT CASE** |
| **CHURCHILL DOWNS, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**CHURCHILL DOWNS, INC.'S RULE 12(b)(6) MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

## <u>TABLE OF CONTENTS</u>

**Page**

I. STATEMENT OF ISSUE ................................................................................ 2

II. BACKGROUND ........................................................................................... 3

    A. Case Background ..........................................................................3

    B. The Asserted Patents Disclose Nothing More than the Abstract Idea of Account Administration....................................................................3

        1. The Asserted Claims of the '138 Patent ............................................. 7

        2. The Asserted Claims of the '768 Patent ............................................. 8

III. LEGAL STANDARD..................................................................................... 10

    A. This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6) ..................................................................................10

    B. Claim Construction Is Not Necessary to Conclude That a Patent Does Not Recite Eligible Subject Matter ....................................................12

    C. The Law of 35 U.S.C. § 101 ...........................................................12

IV. ARGUMENT: THE ASSERTED CLAIMS ARE PATENT INELIGIBLE UNDER 35 U.S.C. § 101................................................................................. 14

    A. The Asserted Claims Are Directed to the Patent-Ineligible Abstract Concept of Account Administration .........................................................14

    B. The Asserted Claims Fail to Add Anything Significant to this Abstract Concept ......................................................................................19

    C. The Dependent Claims Add No Significant Patentable Subject Matter .......23

V. CONCLUSION................................................................................................. 26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)..................................................17, 18, 21, 24

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ..................................................................... *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................10

*Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012)..............................................12, 17, 18, 21

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008) (en banc), *aff'd, Bilski v. Kappos*, 561
  U.S. 593 (2010)................................................................................. *passim*

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014)....................................................20, 21, 22

*Cardpool Inc. v. Plastic Jungle, Inc.*,
  No. C. 12-04182, 2013 WL 245026 (N.D. Cal. Jan. 22, 2013) ..................11

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
  21 F. Supp. 3d 758 (E.D. Tex. 2014) (Davis, J.) ............................... *passim*

*In re Comiskey*,
  554 F.3d 967 (Fed. Cir. 2009)..................................................................19

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014).............................................................2, 21

*Cuvillier v. Sullivan*,
  503 F.3d 397 (5th Cir. 2007) ...............................................................10, 11

*Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*,
  558 F. App'x 988 (Fed. Cir. Feb. 26, 2014) ...................................... *passim*

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011)......................................................... *passim*

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012).............................................11, 18, 20, 21

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980)................................................................................................12

*Diamond v. Diehr*,
    450 U.S. 175 (1981)..........................................................................................13, 20

*Digitech Image Techs., LLC v. Elec. For Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014)............................................................................21

*Eclipse IP LLC v. McKinley Equipment Corp.*,
    No. SACV 14-742-GW, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014)......................11

*Elec. Power Grp., LLC v. Alstom S.A.*,
    No. 2015-1778, 2016 WL 4073318 (Fed. Cir. Aug. 1, 2016) .................13, 15, 19, 23

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012)..........................................................................13, 18

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*,
    No. 12-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014) ...........................11

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)............................................................................................18, 20

*Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)..............................................................................21

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)..........................................................................15, 18

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
    107 F. Supp. 3d 677, 694 (E.D. Tex. 2015).......................................................19, 21

*Lovelace v. Software Spectrum*,
    78 F.3d 1015 (5th Cir. 1996) ................................................................................10

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
    984 F.Supp.2d 189 ................................................................................................24

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012)........................................................................................13, 24

*O'Reilly v. Morse*,
    56 U.S. 62 (1853)..................................................................................................18

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    No. C-12-1233, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012).................................12

*Parker v. Flook,*
    437 U.S. 584 (1978)................................................................................13

*Research Corp. Technologies v. Microsoft Corp.*,
    627 F.3d 859 (Fed. Cir. 2010)...........................................................22, 23

*In re Schrader,*
    22 F.3d 290 (Fed. Cir. 1994)..................................................................19

*SiRF Tech., Inc. v. Int'l Trade Comm'n,*
    601 F.3d 1319 (Fed. Cir. 2010).............................................................22

*SmartGene, Inc. v. Advanced Biological Labs, SA,*
    555 F. App'x 950 (Fed. Cir. 2014) ...............................................19, 22, 24

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
    No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014)................................11

*UbiComm, LLC v. Zappos IP, Inc.*,
    No. 13-1029, 2013 WL 6019203 (D. Del. Nov. 13, 2013).........................................11

**Statutes**

35 U.S.C. § 101 ..................................................................................... *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ...................................................2, 10, 11

Rule 12(c).................................................................................................11

U.S. Patent No. 6,666,768.......................................................................... *passim*

U.S. Patent No. 6,872,138.......................................................................... *passim*

Defendant Churchill Downs, Inc., respectfully moves to dismiss this case because Plaintiff Computer Tracking Systems LLC ("CTS") has failed to state a claim upon which relief can be granted. CTS alleges infringement of multiple claims of U.S. Patent No. 6,872,138 (the "'138 Patent") and U.S. Patent No. 6,666,768 (the "'768 Patent") (collectively, the "asserted patents"). But the claims of the asserted patents are directed to an abstract idea: the administration of a user account. And they do not include any further meaningful limitations that would ensure that they amount to "significantly more" than just the ineligible abstract idea, as required by the U.S. Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Thus, the claims of the asserted patents are not patent eligible.

In particular, the asserted patents disclose only generic, conventional components (e.g., a computer and a modem) to create, authenticate, and manage a user account. The asserted patents are altogether devoid of any specialized computer components or programming to perform the simple "YES" or "NO" decision making set forth in the specification, and instead explain that a variety of generic hardware or software modules may be used to "perform particular tasks or implement particular abstract data types." The patentee did not invent the concept of account administration. Instead, the patentee claimed a computerized method and system for doing account administration in a "game of chance" setting. In fact, even under CTS' characterization in its Complaint, the asserted patents simply allow a sponsor to identify, authenticate, and track user activity, which can be (and indeed is) also performed manually. The asserted patents thus recite nothing more than an abstract idea implemented via the use of existing and basic computer equipment.

A series of cases from the U.S. Supreme Court and the Federal Circuit over the past few years confirms that abstract ideas just like the one here are not patent eligible under § 101, even if

coated in a veneer of "computer" implementation. For example, in *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372–77 (Fed. Cir. 2011), the Federal Circuit affirmed summary judgment of invalidity under § 101 of claims for a process of collecting and organizing data regarding credit card transactions using computers over the Internet. Likewise, in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014), the Federal Circuit affirmed dismissal on the pleadings of claims drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory. Like the claims addressed in those cases, and numerous others, the claims in the asserted patents are ineligible for patenting because they recite nothing but an abstract concept performed on a general purpose computer that otherwise could be performed with a pen and paper.

Resolving these issues does not require discovery or claim construction. Therefore, to avoid waste of judicial and party resources unnecessarily litigating invalid patents, Defendant requests that the Court dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.     STATEMENT OF ISSUE

The issue for the Court is whether this case should be dismissed for failure to state a claim upon which relief can be granted when the asserted claims of the asserted patents purport to patent an abstract idea and therefore, are ineligible for patentability under 35 U.S.C. § 101.

## II.     BACKGROUND

### A.     Case Background

On July 12, 2016, CTS, a non-practicing entity, filed this lawsuit,[1] accusing the Oaklawn Anywhere online pari-mutuel wagering platform ("Accused Product") of infringing claims 1, 3, and 6 of the '138 Patent and claims 13, 14, 19–22, 26–28, and 31–33 of the '768 Patent (collectively, the "asserted claims"). Compl. ¶¶ 16, 37. CTS alleges that the Accused Product purportedly can be used "to register, identify, track individual players and to set aside a predetermined amount of a player's electronic purchases to be deposited into a registered player's account based on predetermined conditions." *See id*. CTS characterizes the "inventions" as allowing sponsor computers "to identify, authenticate and track user activity on player communication devices." Compl. ¶¶ 10, 31.

### B.     The Asserted Patents Disclose Nothing More than the Abstract Idea of Account Administration

The '138 Patent (Compl. Ex. 1) issued in 2005, and the '768 Patent (Compl. Ex. 2) issued in 2003. The application that resulted in the '138 Patent is a division of U.S. Patent Application No. 09/800,162 (now the '768 Patent). Both asserted patents are entitled "System and Method for Tracking Game of Chance Proceeds" and generally relate to systems and methods for the administration of a registered player account. *See* '138 Patent, Abstract; '768 Patent, Abstract.

The asserted patents purport to allow a user to register for an account and purchase a "game of chance item" (e.g. lottery tickets). The user's "set aside amount" is updated to reflect a portion of the user's purchase amount (e.g., ten percent). Once a user's set aside amount reaches a certain

---

[1] CTS also filed nearly identical complaints in this district against Penn National Gaming, Inc. (No. 2:16-cv-767), Midwest Gaming and Entertainment, LLC (No. 2:16-cv-765), Huuuge, Inc. (No. 2:16-cv-764), and Morris Mohawk Gaming Group (No. 2:16-cv-766).

level (e.g., $50), the set aside amount is used to credit the user's account balance. More specifically, the specifications disclose the following "YES" or "NO" decision making steps set forth in the purported "invention":



**FIG. 10**

'138 Patent, Fig. 10; '768 Patent, Fig. 10.

Referring now to FIG. 10, an exemplary method 1000 for tracking lottery proceeds is illustrated. Beginning at 1010, a point of sale computer (e.g., lottery retail terminal) receives a player's identification. At 1020, a determination is made concerning whether the player is a registered player. If the determination at 1020 is YES processing continues at 1050. If the determination at 1020 is NO, at 1030 at determination is made concerning whether the identification is valid. If the determination at 1030 is NO, no further processing occurs. If the determination at 1030 is YES, at 1040 the player is registered. At 1050, the registered player selects his game of chance items (e.g., selects lottery tickets). At 1060, the registered player receives his game of chance items (e.g., receives his lottery tickets).

**Defendant's Rule 12(b)(6) Motion to Dismiss**                                                    **Page 4**

At 1070, the registered player's current set aside amount is increased with a predetermined percentage of the purchase amount (e.g., ten percent of play).

'138 Patent, 9:45–60; *see also* '768 Patent, 9:39–54 (same).

After registration, a "YES" or "NO" determination "is made whether the registered player has played the minimum qualifying amount (e.g., five hundred dollars) for the reporting period." '138 Patent, 9:5–14; '768 Patent, 9:1–8. If the determination is NO, no further action is taken. '138 Patent, 9:5–14; '768 Patent, 9:1–8. If the answer is YES, "the current set aside amount for the registered player is transferred to the registered player's account." '138 Patent, 9:5–14; '768 Patent, 9:1–8. Figure 6 depicts the steps above:



'138 Patent, Fig. 6; '768 Patent, Fig. 6.

The specification discloses only a handful of generic computer components, including a "point of sale" computer and a "sponsor" computer. *See*, *e.g.*, '138 Patent, 4:15–46; '768 Patent, 4:15–46. Neither the point of sale computer nor the sponsor computer is a specialized device. Instead, both "may be practiced with numerous computer system configurations," including

"single-processor or multiprocessor computer systems, minicomputers, mainframe computers, as well as personal computers, hand-held computing devices, microprocessor-based or programmable consumer electronics, and the like, each of which may be operatively coupled to one or more associated devices." '138 Patent, 5:32–46; '768 Patent, 5:28–41.

The specification indicates that the point of sale computer can communicate electronically with the sponsor computer via a variety of generic computer components, including "a direct connection, the Internet, dial-up modem connection, local area network, wide area network, wireless network or personal area network" to identify a registered user, and further notes that the identification could also be performed by "another person (e.g., store clerk)." '138 Patent, 4:25–37; '768 Patent, 4:20–30.

The asserted patents specify that the sponsor computer is "adapted" to store registered player information, including an identifier, name, address, and/or social security number, along with a set aside amount. '138 Patent, 4:33–41; '768 Patent, 4:33–46. The registered player information can also include a player purchase history. '138 Patent, 4:52–54; '768 Patent, 4:47–49. The sponsor computer is further "adapted" to electronically communicate with an account computer, which in turn is "adapted" to establish a registered player account. '138 Patent, 10:7–10; '768 Patent, 10:1–4.

No details are provided on how to "adapt" any of the foregoing generic computer components, nor is any special programming or algorithm identified to implement the series of basic "YES" or "NO" decisions discussed in the specifications. Instead, the asserted patents note only that, "[w]hile the invention has been described above in the general context of computer-executable instructions that may run on one or more computers, those skilled in the art will recognize that the invention also may be implemented in combination with other program modules

and/or as a combination of hardware and software." *See* '138 Patent, 10:11–16; '768 Patent, 10:5–10. And that the software could "include routines, programs, components, data structures, etc. that perform particular tasks or implement particular abstract data types." '138 Patent, 10:16–19; '768 Patent, 10:10–13.

### 1.     The Asserted Claims of the '138 Patent

The '138 Patent includes six claims, of which method claim 1 is the only independent claim:

> 1. In a ***computer environment***, a method for establishing a registered player set aside and registered player account, comprising:
>
>> receiving identification from a player;
>>
>> determining whether the identification is valid;
>>
>> obtaining the player's authorization to establish a registered player account;
>>
>> registering the player;
>>
>> establishing a registered player set aside; and,
>>
>> establishing a registered player account, the registered player set aside increased by a predetermined portion of a registered player's purchase, the registered player set aside transferred to the registered player account, once the registered player's set aside amount reaches a predetermined threshold level in a predetermined period of time.

'138 Patent, cl. 1 (emphasis added). As shown above, the only computer related term recited in the claim, "computer environment," appears in the preamble. And each of the method steps involves simple account management—easily and routinely performed by humans. For example, a "registered player set aside," designed to "increase the social acceptance of the sponsor's gaming opportunities," is far from novel and no different than a rebate or rewards program—both of which have been around for years. *Id.*, 2:7-15 ("allowing a predetermined amount of a registered player's

**Defendant's Rule 12(b)(6) Motion to Dismiss**                                                      **Page 7**

purchases (e.g., set aside amount) to be deposited in a registered player account for the benefit of the registered player or his/her designate").

The asserted dependent claims of the '138 Patent similarly fail to take the claims beyond an abstract concept. Dependent claims 3 and 6 are asserted. Claim 3 specifies that "the registered player account includes an account value and at least one of registered player identification number, registered player name, registered player address, registered player telephone number and registered player social security number. Claim 6 specifies that "the purchase is a game of chance item associated with a private business.[2]

## 2. The Asserted Claims of the '768 Patent

The '768 Patent includes 35 claims, of which claims 1, 13, 26, 29, 31, 34, and 35 are independent. Independent claims 13, 26, and 31 are asserted. Claim 26 is representative:

> 26. In a ***computer environment***, a method for tracking game of chance proceeds comprising:
>
> > receiving player identification;
> >
> > selecting sponsor game of chance item;
> >
> > purchasing sponsor game of chance item;
> >
> > receiving sponsor game of chance item;
> >
> > determining whether the player is a registered player; and,
> >
> > increasing a registered player's current set aside amount with a predetermined amount of a purchase amount wherein availability of the set aside amount is not dependent upon a result of the game of chance item.

---

[2] Although not asserted in this case, dependent claims 2, 4, and 5 of the '138 Patent fare no better. For example, dependent claim 2 simply specifies that the registered player account is of a particular type of account, claim 4 specifies that the game of chance is a state-sponsored lottery, and claim 5 specifies that the game of chance is associated with a government agency.

'768 Patent, cl. 26 (emphasis added). Like claim 1 of the '138 Patent, the only computer related term recited in the claim, "computer environment," appears in the preamble.

Claims 13 and 31[3] add a handful of generic terms and computer components configured to implement the same idea (e.g., claim 13: "player communication device," "sponsor computer," "electronically communicate," "electronically receive"; claim 31: "computer-readable medium" and "computer executable instructions").

Like the '138 Patent, the asserted dependent claims[4] of the '768 Patent—claims 14, 19–22, 27–28, and 32–33—fail to take the claims beyond an abstract concept. These additional elements include:

- identifying the player communication device as "one of personal computer, a remote terminal, telephone and a personal digital assistant." (claim 14);

- specifying that the registered player purchase information "includes at least one of registered player identification number, registered player name, registered player address, registered player social security number, registered player telephone number, registered player purchase history and current set aside amount." (claim 19);

---

[3] The non-asserted independent claims are similarly invalid. Claim 1 merely substitutes the "player communication device" in claim 13 with a "point of sale computer." *Compare* '768 Patent, cl. 1 *with* cl. 13. Independent claim 29 adds the abstract idea of returning the player's set aside amount back to the sponsor, if the player has not spent a minimum amount. Claim 34 recasts the claim in means-plus-function format, but as previously discussed, nothing the in specification provides a specific hardware or software implementation. Finally, claim 35 is rephrased as an unspecified "signal" for communicating between the sponsor computer and point of sale computer.

[4] The non-asserted dependent claims specify various ways in which the account management could be performed, including, e.g., the type of player information to track and the type of game to be played. The only computer-related terms are in claim 9, which specifies conventional devices used for electronic communication ("at least one of a direct connection, the Internet, a dial-up modem connection, a local area network, a wide area network, a wireless network and a personal area network"). Each is thus invalid for the same reasons discussed herein.

**Defendant's Rule 12(b)(6) Motion to Dismiss**                                      **Page 9**

- specifying that the registered player purchase information "is utilized by the sponsor for at least one of targeted marketing, product development and facilitating registered player income tax reporting." (claim 20);

- specifying that the point of sale computer and the sponsor computer "communicate electronically by at least one of a direct connection, the Internet, a dial-up modem connection, a local area network, a wide area network, a wireless network and a personal area network." (claim 21);

- specifying that the calculation of the set aside amount "is a function of one of an amount played over a period of time by the registered player, an amount directly contributed to the registered player account by the registered player, a period of time the registered player has played the game of chance, the game of chance played by the registered player, the time of day the registered player played the game of chance and a location of the point of sale computer." (claim 22, 28, 33); and

- specifying that the method of claim 26 and the "computer-executable medium" of claim 31 include registering a player (claims 27, 32).

## III.   LEGAL STANDARD

### A.   This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point

of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted). By doing so, courts succeed in "removing the abusers from the system before they can do their damage by imposing expense on the system, for example, when they seek nuisance settlements from many entities." Chief Judge Randall R. Rader, Federal Circuit and Eastern District of Texas Joint Bench/Bar Conference (Nov. 1, 2013) (discussing summary judgment practice) (attached as Ex. A) (available at http://mcsmith.blogs.com/files/rader-2013-ed-tex-bb-speech.pdf).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *In re Bilski*, 545 F.3d 943, 950–51 (Fed. Cir. 2008) (en banc) ("*Bilski I*"), *aff'd*, *Bilski v. Kappos*, 561 U.S. 593 (2010) ("*Bilski II*"). Patent eligibility is evaluated from the perspective of the claims. *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under § 101, one must focus on the claims."). In order to be actionable, a patent's claims must be drawn to patent-eligible subject matter under § 101. *Bilski I*, 545 F.3d at 950. Accordingly, the § 101 inquiry is properly raised on a motion to dismiss under Rule 12(b)(6). *See, e.g., Eclipse IP LLC v. McKinley Equipment Corp.*, No. SACV 14-742-GW, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) (granting Rule 12(b)(6) motion); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014) (same); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014) (same); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758 at 762, 769 (E.D. Tex. 2014) (Davis, J.) (granting Rule 12(c) motion); *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029, 2013 WL 6019203, at *6 (D. Del. Nov. 13, 2013) (granting Rule 12(b)(6) motion); *Cardpool Inc. v. Plastic Jungle, Inc.*, No. C. 12-04182, 2013 WL 245026, at *4 (N.D. Cal. Jan. 22, 2013) (granting Rule 12(b)(6)

motion); *OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233, 2012 WL 3985118, at *20 (N.D. Cal. Sept. 11, 2012) (same).

### B.     Claim Construction Is Not Necessary to Conclude That a Patent Does Not Recite Eligible Subject Matter

Claim construction is not required to conduct a § 101 analysis. *See Clear with Computers*, 21 F. Supp. 3d at 764; *see also Alice*, 134 S. Ct. 2347 (finding subject matter ineligible without performing claim construction); *Bilski II*, 561 U.S. at 611–12 (same); *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, 558 F. App'x 988, 991 n.1 (Fed. Cir. Feb. 26, 2014) (non-precedential) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility."); *Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### C.     The Law of 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. In addition, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over such ideas would preempt their use in all fields. *See Bilski II*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Second, if the claim contains such an abstract idea, the court

evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). The Federal Circuit recently described the first-step inquiry as looking at the "focus," "basic thrust," or "character as a whole," and the second-step inquiry as "looking more precisely at what the claim elements add" to try to identify an "inventive concept." *Elec. Power Grp., LLC v. Alstom S.A.*, No. 2015-1778, 2016 WL 4073318, at *3 (Fed. Cir. Aug. 1, 2016) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, No. 2015–1763, 2016 WL 3514158, at *5 (Fed. Cir. June 27, 2016)).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed by a human using pen and paper, it is not patent-eligible. *Cybersource*, 654 F.3d at 1372–73. In addition, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski II*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

A process may be patent-eligible if it is "'tied to a particular machine or apparatus' or 'transforms a particular article into a different state or thing.'" *Cyberfone*, 558 F. App'x at 992 (citations omitted). However, simply adding a machine or transformation to a method claim does not move the invention into the realm of the patentable; the claimed machine or transformation must impose *meaningful* limits on the claim's scope. *Id.*; s*ee also Clear with Computers,* 21 F. Supp. 3d at 764 (citing *CyberSource*, 654 F.3d at 1375–76, and *Dealertrack,* 674 F.3d at 1333).

## IV.   ARGUMENT: THE ASSERTED CLAIMS ARE PATENT INELIGIBLE UNDER 35 U.S.C. § 101

### A.   The Asserted Claims Are Directed to the Patent-Ineligible Abstract Concept of Account Administration

The asserted patents claim nothing but the patent-ineligible abstract concept of account administration, including creating a user record containing standard identifying fields (name, address, telephone number, etc.), making a purchase, and updating an amount field on a user's record based on a purchase amount—a process that could be performed with pen and paper. This abstract idea is self-evident after removing the generic computer terms to reveal the bare idea. Importantly, even before the Supreme Court decided *Alice*, the Federal Circuit concluded in *Cyberfone* that a patent, which went well beyond the recited steps in the asserted claims here, was a mere patent-ineligible abstract concept. In that case, the patent covered steps for classifying information: "obtaining data, 'exploding' the data, i.e., separating it into component parts, and sending those parts to different destinations." 558 F. App'x at 990. The Court held that the claims were thus directed to an abstract idea:

> Like protecting against risk, using categories to organize, store, and transmit information is well-established. Here, the well-known concept of categorical data storage, i.e., the idea of collecting information in classified form, then separating

and transmitting that information according to its classification, is an abstract idea
that is not patent-eligible.

*Id.* at 992. Here, the asserted patents claim only a small portion of that which was at issue in

*Cyberfone*—and are merely directed to the concept of (1) collecting and (2) storing data, an

abstract idea not eligible for patent protection. *See id.; see also Elec. Power Group,* 2016 WL

4073318, at *3 ("Information as such is an intangible").

To be sure, the claims of the asserted patents encompass a fundamental, abstract concept

that has been in use for a long time by human beings, using a pen and paper. The asserted claims

are extremely short, simple, and abstract. With the sprinkling of just a few basic computer terms,

like "computer environment," "sponsor computer," and "modem," the claims encompass no more

than the idea of a person registering for a user account and having a field updated on the user's

record to reflect a portion of the user's purchase amount. There is no specific application of the

idea, as the claims contain no restrictions on how to implement the idea. *See Internet Patents Corp.*

*v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (affirming invalidity where the claim

"contains no restriction on how the result is accomplished" and where "[t]he mechanism for

maintaining the state is not described, although this is stated to be the essential innovation").

In fact, the entire process as set forth in method claim 1 of the '138 Patent and method

claim 26 of the '768 Patent could unquestionably be performed by a store clerk who mentally

performs the "YES" or "NO" decision-making steps set forth in the specification. For example,

"game of chance" items like lottery tickets are routinely purchased from a store clerk at a private

business,[5] such as a convenience store or gas station. In particular, a customer could enter a

---

[5] *See* '138 Patent, cl. 6 ("the purchase is a game of chance item associated with a private
business").

**Defendant's Rule 12(b)(6) Motion to Dismiss**                                                          **Page 15**

convenience store and proceed to the counter where the customer requests to purchase a lottery ticket from the store clerk ("purchasing sponsor game of chance item"). At the point-of-sale, the store clerk could check the customer's identification—e.g., a driver's license ("receiving identification from a player"),  and the clerk could then compare that driver's license features and information against known features and information of valid driver's licenses—e.g., the state seal or holographic imprints ("determining whether the identification is valid"). If the store determines that the identification is valid (i.e., the answer is "YES"), the store clerk could ask the customer whether he would like to register as a preferred customer ("obtaining the player's authorization to establish a registered player's account"). If so, the clerk could gather information (e.g., name, address, telephone number)[6] and record that information, on the pad of paper or in the card file (establishing a registered player account and "registering the player"). The store clerk could then note in the customer's record a percentage of the amount spent on the lottery ticket, which could consist of crediting the set aside with store loyalty points or reward points, where the amount credited corresponds to a percentage of the amount spent on the lottery ticket ("establishing a registered player set aside" and "the registered player set aside increased by a predetermined portion of the registered players purchase").[7] Notably, the specification even acknowledges that

---

[6] *See* '138 Patent, cl. 3 ("the registered player account includes an account value and at least one of registered player identification number, registered player name, registered player address, registered player telephone number and registered player social security number.").

[7] Although not asserted in this case, the claims that involve an "account manager" do not change the analysis. Not only is the account manager another generic computer that merely contains storage (to keep track of a registered player's account balance), but its functionality could also be performed mentally or by pen and paper. For instance, the store clerk could alert the customer that his set-aside amount has reached a certain level after a purchase of a lottery ticket. The set-aside amount could them be deposited (e.g., as store credits or cash refunds) into the customer's personal savings account.

this process could be performed by "another person (e.g., store clerk)." '138 Patent, 4:25–37; '768 Patent, 4:20–30.

The other two asserted independent claims, claims 13 and 31 of the '768 Patent, essentially recite a "system" for performing the methods of claim 1 of the '138 Patent and claim 26 of the '768 Patent, specifying a few generic computer terms to carry out the same idea. In particular, the claims recite a "player communication device" and a "sponsor computer," both "adapted to" perform the steps that the store clerk in the example above would otherwise perform: i.e., to facilitate a user purchase, record information about the customer, and calculate a set aside amount. However, merely transforming a method claim into a system claim for performing the same claimed steps makes no difference under § 101. *See, e.g., Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1342 (Fed. Cir. 2013) ("Because the system claim and method claim contain only minor differences in terminology [but] require performance of the same basic process, they should rise or fall together." (quotation omitted)); *Bancorp*, 687 F.3d at 1277 (finding that claims to a method and system for performing the method had "no material difference," and "the form of the claims should not trump basic issues of patentability"). All CTS's system claims have done is taken the mental steps in claim 1 of the '138 Patent and claim 26 of the '768 Patent and applied them to a generic "computer."

Numerous recent cases from the Supreme Court and Federal Circuit illustrate why such claims are not patentable under § 101. *See, e.g., Bilski II*, 561 U.S. at 611 (reasoning that the claims merely explained the basic concept of hedging, which "is a fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class"); *Accenture*, 728 F.3d at 1344–46 (claims drawn to a system for generating tasks to be performed in an insurance organization were abstract even though they recited numerous generic computer components such

as "an insurance transaction database, a task library database, a client component for accessing the insurance transaction database, and a server component that interacts with the software components and controls an event processor, which watches for events and sends alerts to a task engine that determines the next tasks to be completed"); *Bancorp*, 687 F.3d at 1269 (concluding that claims directed to computerized "systems and methods for administering and tracking the value of life insurance policies in separate accounts" encompassed an abstract idea).

Like those cases, the asserted claims cover only a bare abstract idea, with no meaningful restrictions, such that any individual (e.g., a store clerk) who sells a lottery ticket (or any other merchandise) to a customer and records certain details of that transaction would infringe. *See Internet Patents*, 790 F.3d at 1348; *O'Reilly v. Morse*, 56 U.S. 62, 113 (1853) (finding claim for electromagnetic telegraph ineligible where, in the claim, "it matters not by what process or machinery the result is accomplished"); *see also Gottschalk*, 409 U.S. at 71–72 (noting that, if the claimed abstract idea "has no substantial practical application except in connection" with the particular field claimed, then allowing a claim to that idea, even if limited to a particular field, "would wholly pre-empt" the idea and "in practical effect would be a patent on the [idea] itself").

The abstract concept of the administration of a user account is no more eligible for a patent than hedging risk in the energy market (*Bilski II*), gathering and sorting transaction information over a network (*Cyberfone*), administering and tracking life insurance policy values (*Bancorp*), and managing tasks in an insurance agency (*Accenture*).[8]

---

[8] *See also Fort Props.*, 671 F.3d at 1318, 1322–23 (finding that a method for "creating a real estate investment instrument" by aggregating real property and, using a computer, "generating a plurality of deedshares" encompassed an abstract concept); *Dealertrack*, 674 F.3d at 1330–34 (finding computer-aided method and system for processing credit applications over electronic networks to claim an abstract concept); *CyberSource*, 654 F.3d at 1367–68, 1376–77 (finding methods for verifying credit card transactions over the Internet to encompass an abstract concept);

**B.**     **The Asserted Claims Fail to Add Anything Significant to this Abstract Concept**

Recent § 101 cases have consistently held that recitation of a computer and its generic components such as the asserted claims' "computer" and "modem" is not enough to transform claims from an abstract idea or mental process into patent eligible ones. *See, e.g.*, *SmartGene, Inc. v. Advanced Biological Labs, SA*, 555 F. App'x 950, 954–55 (Fed. Cir. 2014); *see also Elec. Power Group*, 2016 WL 4073318, at *5 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information").

Many of the claims specify no computer or other hardware components at all. *See, e.g.,* '138 Patent, cl. 1 ("In a computer environment…"). And none of the claims, understood in light of the specification, require anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information. The fact that the claimed methods could easily be performed manually by a store clerk reinforces the generic nature of the claimed computer components and the invalidity of the patents. Federal Circuit Judge Bryson, sitting by designation in the Eastern District of Texas, explained that such simplicity is a litmus test for whether an invention merely recites a general purpose computer. *See Kroy IP Holdings, LLC v. Safeway, Inc.*, 107 F. Supp. 3d 677, 694 (E.D. Tex. 2015) ("[T]he computers in the claimed system and methods simply perform tasks that could be performed by a human if the scale of the incentive program were small and there were no premium on the speed and efficiency that are typically offered by generic computers."). Moreover, the "invocation of

---

*In re Comiskey*, 554 F.3d 967, 970–71, 981 (Fed. Cir. 2009) (finding claims to a method for conducting arbitration abstract); *In re Schrader*, 22 F.3d 290, 291, 293–94 (Fed. Cir. 1994) (finding claims for bidding at an auction abstract).

computers adds no inventive concept [where t]he computer functionality is generic." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014). Instead, simply computerizing abstract ideas is completely conventional and unpatentable.

Long ago, the Supreme Court noted that the abstract ideas exception "cannot be circumvented by attempting to limit the use of the [idea] to a particular technological environment." *Diamond v. Diehr*, 450 U.S. at 191–92. And in *Gottschalk*, the Supreme Court found that an algorithm capable of converting binary-coded decimal numerals into pure binary code was an unpatentable abstract idea even though the algorithm had "no substantial practical application except in connection with a digital computer." 409 U.S. at 64–67.

Following these principles, the Federal Circuit has now repeatedly confirmed that the use of a "computer to perform [a] mental process … does not impose a sufficiently meaningful limit on the claim's scope. *CyberSource*, 654 F.3d at 1376–77 (affirming summary judgment that claims to a computerized method for verifying credit card information over the Internet failed § 101). Likewise, in *Dealertrack*, the court agreed that claims to a method for processing credit applications over electronic networks were not patentable just because they were claimed as computerized: "Simply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible." *Dealertrack*, 674 F.3d at 1333.

In this case, "in a computer environment" is the only computer-related term in claim 1 of the '138 Patent and claim 26 of the '768 Patent. Likewise, "computer-readable medium" and "computer executable instructions" are the only computer-related terms in claim 31 of the '768 Patent. And each of these terms appears only in the preamble of the claims, merely stating the intended use of the purported invention, which is insufficient to tie the claims to any particular

machine or otherwise impose meaningful limitations that could transform the abstract idea into patent-eligible subject matter. *See Digitech Image Techs., LLC v. Elec. For Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("The only mention of a 'digital image reproduction system' lies in the claim's preamble, and we have routinely held that a preamble does not limit claim scope if it 'merely states the purpose or intended use of an invention.'" (quotation omitted)).

While the terms "communication device" and "sponsor computer" do appear in the body of claim 13 of the '768 Patent, both are intended simply to perform the steps that could otherwise be performed manually. *See Kroy IP*, 107 F. Supp. 3d at 694 ("[A]s in *Ultramercial*[, *Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014)]*, Content Extraction, buySAFE, Accenture*, *Bancorp* and *Cybersource*, the computers in the claimed system and methods simply perform tasks that could be performed by a human if the scale of the incentive program were small and there were no premium on the speed and efficiency that are typically offered by generic computers."). Claim 13 is no different in substance than method claim 1 of the '138 Patent and method claim 26 of the '768 Patent, reciting a handful of generic terms and computer components configured to implement the same idea and is thus invalid for the same reasons. *Alice*, 134 S. Ct. at 2351 (warning against "interpreting § 101 "in ways that make patent eligibility depend simply on the draftsman's art" (quotation omitted)).

And regardless of where they appear in the claim, the few recited computer components are not unlike the following generic components that were insufficient to save the claims from § 101 ineligibility:

- *Bancorp* (system claim recited a "policy generator," several "calculators," and "digital storage"), 687 F.3d at 1271;

- *Dealertrack* (claims recited a "computer," "central processor," "application entry and display device," "communications medium," and "terminal device"), 674 F.3d at 1319;

- *Cyberfone* (claim recited receiving transaction data in a "single transmission" from a "telephone"), 558 F. App'x at 990; and

- *Clear with Computers* (claims recited "user interface," "server" computer, "client" computer, and communication "via the Internet"), 21 F. Supp. 3d 758 at 768.

Like these cases, the asserted claims recite nothing more specific than generic computer components to receive and process information, and thus fail to provide any "meaningful" limits or "enough" of significance to go beyond the abstract concept and mental process. *See, e.g., buySAFE*, 765 F.3d at 1355 (concluding that a computer "receiving" a request and "processing" the request "with no further specification [] is not even arguably inventive"). Moreover, the asserted claims' recitation of a "computer environment," "communication device," a "sponsor computer," and a "computer-readable medium," is not functionally different than reciting just a "computer" because such components are not "new machinery." *SmartGene*, 555 F. App'x at 955.

To show how the asserted claims fail to go beyond the abstract, it is also helpful to compare them to the cases in which the Federal Circuit has found challenged claims to be sufficiently inventive and concrete. The Federal Circuit cases finding claims to pass the § 101 threshold have been ones that recite specific machines or complex algorithms in the claims. For example, in *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010), the Federal Circuit upheld the patentability of claims drawn to an improved GPS process where the claims required calculating an "absolute position" and using "[p]seudoranges, which are distances or estimated distances between satellites and a GPS receiver[.]" *Id*. at 1332. As the Court explained, "[i]t is clear that the methods at issue could not be performed without the use of a GPS receiver." *Id*. Likewise, in *Research Corp. Technologies v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010), the court found that the method "required the manipulation of computer data structures (*e.g.*, the pixels of a digital image and a two-dimensional array known as a mask) and the output of a modified computer

data structure (a halftoned digital image)." *CyberSource*, 654 F.3d at 1376 (describing the holding of *Research Corp.*).

These cases have no applicability to CTS's asserted claims, which fail to recite any specific hardware that is required, such as a GPS receiver, and instead merely claim a general purpose computer and routine logic that consists of "YES" and "NO" decisions that a human can and does perform.[9] *See Elec. Power Group*, 2016 WL 4073318, at *5 (concluding that claims did not "state an arguably inventive concept in the realm of application of the information-based abstract ideas" because among other things "they do not include any requirement for performing the claimed functions of gathering, analyzing, and displaying in real time by use of anything but entirely conventional, generic technology"). Each claim simply employs the use of a generic computer simply to perform an otherwise abstract concept. The independent claims are thus patent-ineligible under § 101. *Alice*, 134 S. Ct. at 2357.

### C.    The Dependent Claims Add No Significant Patentable Subject Matter

The dependent claims of the asserted patents likewise fail to go beyond the abstract idea of the administration of a user account set forth in claim 1 of the '138 Patent and claims 13, 26 and 31 of the '768 Patent. In particular, each of the dependent claims is equally unpatentable for one or more of the following reasons.

First, two of the dependent claims simply recite additional generic computer terminology like a "modem" and a "personal computer." For example, claim 14 of the '768 Patent indicates that the player communication device can be one of a personal computer, a remote terminal, a

---

[9] Indeed, the only software implementation details provided in the asserted patents is that the software could "be implemented in combination with other program modules" which may "include routines, programs, components, data structures, etc. that perform particular tasks or implement particular abstract data types." '768 Patent, 10:8–13.

telephone or a personal digital assistant, each of which is in itself a generic computer component. Claim 21 of the '768 Patent specifies that the point of sale computer and the sponsor computer "communicate electronically by at least one of a direct connection, the Internet, a dial-up modem connection, a local area network, a wide area network, a wireless network and a personal area network." As discussed above, simply appending unspecialized computer components to an otherwise abstract claim is plainly insufficient under § 101. *See SmartGene*, 555 F. App'x at 955; *see also Accenture*, 728 F.3d at 1345; *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F.Supp.2d 189, 193, 200 (finding that addition of a "remote server" and "network connection" to dependent claims was a "quintessentially commonplace idea," failed to tie the claim to a "specific machine," and was just as unpatentable as the independent claim).

Second, many of the dependent claims can be found wanting for the reason that they add insignificant "pre-solution" or "post-solution" activity that is insufficient for patentability. *See Mayo*, 132 S. Ct. at 1297–98, 1300–01 (noting that both "pre-solution" and "post-solution" activity cannot impart patentability to an otherwise ineligible claim). In particular, a claim is not meaningfully limited "if it contains only insignificant or token pre- or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment." *Clear with Computers*, 21 F. Supp. 3d at 763 (citation omitted). Similarly, data gathering or input steps that lead to the abstract process are "pre-solution" activity that cannot save a claim under § 101: "Even if some physical steps are required to obtain information from the database (e.g., entering a query via a keyboard, clicking a mouse), such data-gathering steps cannot alone confer patentability." *CyberSource*, 654 F.3d at 1370 (citing *In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989)).

For example, claim 6 of the '138 Patent specifies that "the purchase is a game of chance item associated with a private business." Similarly, claim 20 of the '768 Patent involves specifying how registered player purchase information is utilized by the sponsor (i.e., "for at least one of targeted marketing, product development and facilitating registered player income tax reporting"). Identifying a particular category of use, however, underscores that these claims represent nothing more than patent-ineligible extra-solution activity. *See, e.g., Bilski II*, 561 U.S. at 610 ("the prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment'" (citation omitted)).

Claims 22, 28, and 33 of the '768 Patent specify that the calculation of the set aside amount "is a function of one of an amount played over a period of time by the registered player, an amount directly contributed to the registered player account by the registered player, a period of time the registered player has played the game of chance, the game of chance played by the registered player, the time of day the registered player played the game of chance and a location of the point of sale computer." Claim 3 of the '138 Patent and claim 19 of the '768 Patent merely define the type of information to be stored in a user's account (i.e., "an account value and at least one of registered player identification number, registered player name, registered player address, registered player telephone number and registered player social security number"). Likewise, claims 27 and 32 of the '768 Patent involve the pre-solution task of registering a player, without specifying how that step is to be accomplished. Each of these dependent claims involves no more than the extra-solution step of data gathering, which cannot magically transform the abstract idea of the asserted patents into something that meets § 101. *CyberSource*, 654 F.3d at 1372.

As such, the dependent claims also fail to pass § 101's important test designed to ensure that the public retain access to the "storehouse of knowledge of all men ... free to all men and reserved exclusively to none." *Bilski II*, 561 U.S. at 601–02 (quotations omitted).

## V.   CONCLUSION

Because the '138 and '768 Patents are directed to patent-ineligible subject matter under 35 U.S.C. § 101, Defendant respectfully requests that the Court hold the patents invalid and dismiss this case for failure to state a claim upon which relief can be granted.

Dated: September 1, 2016                    Respectfully submitted,


                                            **FISH & RICHARDSON P.C.**

                                            */s/ James E. Youngblood*　　　　　　
                                            Neil J. McNabnay
                                            mcnabnay@fr.com
                                            Texas Bar No. 24002583
                                            James Youngblood
                                            youngblood@fr.com
                                            Texas Bar No. 24070900
                                            Theresa M. Dawson
                                            tdawson@fr.com
                                            Texas Bar No. 24065128

                                            FISH & RICHARDSON P.C.
                                            1717 Main Street, Suite 5000
                                            Dallas, TX  75201
                                            (214) 747-5070 – Telephone
                                            (214) 747-2091 – Facsimile

                                            **COUNSEL FOR DEFENDANT
                                            CHURCHILL DOWNS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on September 1, 2016 to all counsel of record who are deemed to have

consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).


<u>*/s/ James E. Youngblood*</u>
James E. Youngblood